Jan'y Term,      Hitchcox *vs.* Hitchcox.      1868.

2    435
f54   302

# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

Absent, HARRISON, J.*

WALDO P. HITCHCOX *vs.* AVELINE V. HITCHCOX.

## January Term, 1868.

1. In a suit for a divorce the facts of the parties calling each other husband and wife, and of the alleged husband following the alleged wife after she had fled his house, and abusing and threatening her with violence, and that all of their neighbors regarded them as husband and wife and treated them as such, and who proved the woman (who applied for the divorce) to be chaste and virtuous, of good general character, and submissive to the alleged husband, are sufficiently strong to force conviction on the mind of the truth of the alleged marriage between them.

2. This court has jurisdiction to review by appeal a decree of the court below in matters of divorce. The statute puts such causes on the same footing with other chancery causes.

*A. V. Hitchcox*, who alleged that she was the wife of *Waldo P. Hitchcox*, filed her bill in the circuit court of *Ritchie* county, in March, 1866, by *M. P. Amiss*, her next friend. The bill alleged that the complainant was married to the defendant in 1862; that he was negligent, intemperate in drinking ardent spirits, and abusive and violent to her, frequently beating her and threatening her with great bodily hurt, until she was obliged, in order to preserve her life, to flee from him and seek refuge; that she had so fled from him in 1865, and had not lived with him since; that she had a dower interest in several tracts of land, derived from a former husband, and that the defendant was disposing of timber on the same, and had sold her personal estate, but

*Absent from illness.

had entirely neglected and refused to make provision for the plaintiff out of the same, or indeed to make any provision for her at all. That the defendant had followed her wherever she went when compelled to fly from him and had used the most violent and threatening language to her. The bill asked for protection of her person and property, and what she might thereafter acquire, from her "unfeeling husband." That he might be enjoined and restrained from interfering with or in any manner protecting her or her children, (the issue of her former marriage); that she might be divorced and perpetually separated from her husband and protected in person and property; that the defendant be required to refund to the complainant the property that he had taken from her or the proceeds of the sale thereof, and that all transfers and sales of her interest in the real estate before mentioned, by the defendant, might be cancelled and annulled.

Pending the hearing a restraining order was granted the complainant, to prevent the defendant from interfering with her personal liberty and granting her protection, as also her property free from his control. *Hitchcox* answered denying all the allegations of abuse and violence and refusal to support the complainant, and alleging that since the institution of this suit he had cohabited with her and supposed that all difficulties were reconciled; that it was true as alleged in the bill that he was married to complainant and was her lawful husband.

There were other matters in the answer in relation to possession of complainant's real estate and the sale of personal property, which it is unnecessary to notice as that branch of the case was not considered by the court below nor by this court.

A decree was rendered by the court below, at the November term, 1866, granting a divorce *a mensa et thoro*, providing that all right, title and interest of the defendant in or over the estate, real or personal, or person of the complainant should thenceforward cease and be determined, and that she should have custody of her children. It also gave her costs.

Jan'y Term,   Hitchcox *vs.* Hitchcox.   1868.

The testimony to establish the allegations of the bill is substantially given by the president in his opinion.

The defendant, *Hitchcox*, appealed to this court.

*G. H. Lee* for the appellant.
*Stanton & Allison* for the appellee.

BROWN, President.   This was a bill for a divorce *a mensa et thoro*, and for alimony.   The bill avers the marriage and the answer expressly states the marriage also.   One witness in his deposition says: "I am acquainted with Waldo P. Hitchcox, and also A. V. Hitchcox, his wife.   She came to my house, and he came there, and after abusing her, he took a fork up off the table and swore he intended to spill blood with it, following the complainant, she begging him not to hurt her.   Last fall she came to my house with her daughter and said her husband had driven her off and intended to kill her."   In perfect accord with the fact of marriage as stated in the bill and answer and the deposition above of the witness, Nancy Hickman, is the general tenor of the statements of all the witnesses, and they are reconcilable upon no other hypothesis than that of the fact of marriage. That fact being unquestioned, was taken by all the witnesses, who doubtless knew the fact, as a *concessum*.   For instance the witness Cyrus Wick said, "he was acquainted with the parties.   On a certain occasion there was a considerable stir at their residence, near witness' house.   Complainant and defendant had separated, and complainant went to neighbor's house.   Saw defendant pass my house, and in my presence swear he intended to shoot complainant with a pistol he had in his hand, &c., because she was in company of a certain man; that she done it with intention to make him jealous."   Again, "in the night complainant waked me up by screaming; said some one was trying to break in her house; she said it was the defendant."   The witness Thomas Leggett said, "that last fall, in a     , belonging to the complainant, the complainant and defendant and witness were grinding cane and making molasses.   The defendant

turned over the kettle and played thunder generally, and with a knife in his hand swore he would cut her (complainant's) heart out, and she left and went to Mr. Hickman's. About two years last fall, defendant knocked down complainant, in their own house, by the hair of the head, and the defendant was taken away by the soldiers to their camp."

The witness Mrs. Alice Jack, said "she had been acquainted with complainant for eight years. About the middle of April, 1866, he (defendant) came to Campbell's house about two o'clock at night, (witness was sleeping with complainant at the time); defendant broke open the bed room and said that everything she swore to in petition for a restraining order was true; after that he returned and broke the window again; the first time he said if she would converse with him half an hour, and bring a light to the window, he would go away, and if she did not she would be sorry for it; she obliged his request, but in spite of all that, he returned again and broke the window."

Witness Henry Howard says: "I am acquainted with the reputation of complainant, and her character for virtue is good, and all her neighbors say she is virtuous. I know that complainant had to leave home on several occasions on account of ill-treatment. I also understood that she was the main support of the family as a general thing."

The chastity, virtue and good character of complainant are fully proved by the witnesses.

This evidence shows the complainant lived with the defendant as his wife, but if she was not his wife, she could not have been a chaste and virtuous woman as proved by the witnesses, nor could she have acquired a good general character among her neighbors of both sexes. The expression, "their residence" comports with the marriage, but not with the converse; "they separated" likewise agrees with the fact of their marriage, but not otherwise. His denomination over her, and her submission and supplication and efforts to conciliate him are explicable only on the hypothesis of marriage in fact between a jealous, hectoring and

brutal husband, and a helpless, abandoned and submissive wife. These facts and circumstances force conviction on the mind of the truth of a marriage from which she seeks to escape, and he to hold her bound by it; a marriage which she declares and he admits expressly, and if proved by the certificate of marriage or by the eye witnesses of the marriage the conviction would not be more strong. But if any doubt could exist on the subject, the express admission in the answer of the marriage so charged, in a suit of this character, would be sufficient, notwithstanding the statute, chapter 109, section 9, code 1860, which was never intended to change the proof further than to require proof of the adultery or other acts on which the divorce was sought; the evil which the statute was intended to guard against was collusion between the parties to escape from the bonds or obligations of the marriage, and to remove the temptation to become the witness of their own dishonor.

The objection taken to the jurisdiction of the court to review by appeal the decree of the circuit court in a divorce case is without foundation on reason or authority. And the rule in Ohio has never been applied in Virginia. The statute puts the case on the same footing with other chancery suits. The reason assigned, of hot haste often of the parties to contract other marriages, tends strongly towards the evils the statute was intended to repress, by cutting off the facilities of success by their own statements and their own dishonor. The importance and sacredness of the marriage relation should rather require the right of review than in mere matters of dollars and cents.

I think, therefore, that there was no error in the decree of divorce, nor in the provision made for the wife out of her own estate. It should, therefore, be affirmed, with costs and damages to the appellee.

MAXWELL, J. I am not able to concur in the conclusion that the allegation of marriage contained in the bill and admitted in the answer will dispense with the proof of marriage any more than if it were any other fact. The section

referred to requires divorce causes to be heard independently of the admissions of either party in the pleadings or otherwise.

I think, however, the evidence sufficiently establishes a marriage for the purposes of this case.

I concur, with this exception, in the opinion of Judge Brown.

DECREE AFFIRMED.